# IN RE APPLICATION FOR THE REMOVAL OF ABE S. GINSBERG, AN ATTORNEY AT LAW.[1]

December 27, 1918.

No. 20,448.

**Suspension of attorney.**

An attorney was charged with falsely representing to his client that the client's bail had been fixed at $500, when in fact it had been fixed at $300; that he thereby obtained $500 from the client, of which he deposited $300 as bail and retained the balance as fees; that thereafter he sought to obtain more money from the client and, failing, advised the client to forfeit his bail and leave the state. *Held*: The testimony of the chief witnesses is so far corroborated that the attorney was suspended from practicing as an attorney at law, with the privilege to apply for a removal of the suspension, at any time after the expiration of one year. [Reporter.]

**Attorney and client.**

Going into the court room where criminal trials were held, respondent passed and greeted the prisoner whom he had been engaged to defend. On the opening of the court the prisoner's case was called and the bailiff was directed to call him. There was no response. Respondent testified he never left the court room from the time he entered until the noon recess. He had received $420 cash retainer from the prisoner. The prisoner's bail was $300. *Held*: The incident is held indirectly to confirm the accusation against him. [Reporter.]

**Attorney and client — exorbitant fee.**

The exaction of a $220 retainer to defend a wage-earning prisoner from a charge of petit larceny appears unconscionable on the part of a young lawyer of such limited experience that when the charge is changed to grand larceny he feels himself unable to handle that and turns the prisoner over to another lawyer. [Reporter.]

Eli Southworth and Charles J. Traxler, members of the state board of law examiners, filed accusations of wilful misconduct in his profession of attorney at law against Abe S. Ginsberg, and prayed that he be removed from his office as an attorney. The facts are stated in the opin-

[1]Reported in 169 N. W. 787.

ion. The accused filed a general denial. Testimony was taken and the matter was argued. Suspended from practice with privilege to apply for removal of the suspension after the expiration of one year.

*Eli Southworth* and *Charles J. Traxler,* for petitioners.

*L. K. Eaton* and *A. R. Chesnut,* for respondent.

PER CURIAM.

The charges against the respondent that are pressed in this disbarment proceeding are that he falsely represented to his client, Max Miller, that the latter's bail had been fixed at $500 when in fact it had been fixed at $300 and thereby obtained $500 from Miller; and that respondent deposited $300 as bail and retained the balance as fees; that thereafter he sought to obtain more money from Miller, and, failing, advised Miller to forfeit his bail and leave the state.

It appears that Miller was arrested and charged with petit larceny. Respondent saw him in the city lockup and was requested to defend. He obtained $220 from Miller as a retainer. The trial, evidently, did not proceed very far before the court announced that if Miller had committed any offense it was grand and not petit larceny. Accordingly the case was dismissed, and Miller was held until the complaint could be filed charging him with the graver crime. Such complaint was made. Miller desired to give bail. Respondent visited the office of the county attorney with a view to ascertaining the probable amount that would be recommended, and $500 was recommended. Miller was informed of this, and a friend of his by name of Mrs. Genadek undertook to procure the amount. She so did, and handed the sum named to respondent in the corridor outside the municipal court room. When the case was called, for reasons not appearing, the court fixed the bail at $300. Respondent's contention is that Miller was present in court and heard the court announce the amount, and that both he and Mrs. Genadek knew that it was $300. He also claims that it was agreed that respondent's prospective partner should take charge of Miller's defense and that the fees to both should be $500, so that in addition to the $220 paid, in the first instance, and the $200 retained out of the $500 paid by Mrs. Genadek, $80 more should be paid by Miller. Miller and Mrs. Genadek maintain that they did not know that the bail was fixed at $300; that when Miller, after his

release, visited the office of respondent, the latter requested further fees and began to intimate that Miller was in such danger of a long prison term that it was advisable for him to make his escape. Miller admits that, after his indictment and arraignment, he was informed by respondent of the date of trial, and that, notwithstanding the advice he claims to have received to escape, he, nevertheless, went to the court house on the day appointed for trial. But now he testifies that when respondent saw him in the corridor outside the court room, where the criminal cases were being tried, respondent called him a fool and told him to skip or he would get ten years in the penitentiary, and thereupon he fled. It appears that on the day the bail was fixed, and after the parties had left the court room, Miller signed an order, prepared by one of his attorneys, directing the clerk to pay to Mrs. Genadek the $300 bail money, after it had served its purpose.

The testimony discloses that Miller went to Massachusetts and stayed there some time, then returned and surrendered himself to the authorities. He changed his plea to guilty, upon the advice of another counsel procured in the meantime, and was sentenced to ten months in the workhouse. The trial of Bisko, who was jointly indicted with Miller, was set for the same date as Miller's, and when it was found that Miller had absconded the trial of Bisko immediately proceeded, respondent defending. Bisko was convicted and sentenced to the penitentiary.

Discrepancies and contradictions appear in the testimony of Miller and Mrs. Genadek to such an extent that, even after making allowance for their ignorance and imperfect understanding and use of the English language, we would be reluctant to find that the charges have been proven against respondent, unless there was corroboration of their story. But we conclude there is such corroboration in the testimony of Mr. Gordon Grimes respecting the advice to abscond which respondent is charged with giving Miller. We do not overlook the testimony of Mr. Snyder, who was present at the interview wherein, according to the testimony of Mr. Grimes, respondent said "he had advised Mr. Miller to skip out and that advice was worth $5,000 to Miller." We see no possible motive Mr. Grimes could have had for testifying falsely against a brother attorney. He had been successful in the lawsuit of Miller v. Ginsberg,

141 M.—18.

and the judgment he had obtained in favor of Miller had been affirmed
and paid. Grimes had no occasion to feel disgruntled.

One or two other circumstances should be mentioned which appear to
us confirmatory of the claim of Miller. If there was an attempt on the
part of respondent to overreach Miller, as the latter claims, we would
not expect respondent to show much consideration for his client's best
interests. The exaction of a $220 retainer to defend Miller on a petit
larceny charge seems unconscionable, especially for a young lawyer of
such limited experience as respondent seems tacitly to admit, for when
the graver charge was substituted he feels himself incompetent to handle
that, and turns Miller over to his prospective partner, upon, as he claims,
an additional fee of $280 to be paid. Yet, notwithstanding this con-
fessed incompetency to defend Miller, he undertakes to personally con-
duct the defense of Bisko indicted with Miller. Even upon respondent's
own claims, his treatment of Miller does not comport with that fair
dealing which is expected of attorneys worthy to practice their profes-
sion. To exact as large a fee from an ignorant wage earner to defend
him on a misdemeanor charge is not justified by anything appearing
in this proceeding.

Another incident, revealed by the testimony, may be referred to as
an indirect confirmation of Miller's claim. On the morning that the
trial upon the indictment was to take place, respondent, as he went into
Judge Leary's court room, the court room where the criminal trials were
had, passed and greeted Miller in the corridor outside. Immediately
upon the opening of court, the county attorney moved the trial of the
case against Miller, and the bailiff was directed to call him. There
was no response. Respondent testified that he never left the court room
from the time he entered until the noon recess. One would have expected
that an attorney would have taken enough interest in a client whom
he had been engaged to defend and of whom he had received $420 cash
retainer to step out in the corridor where he had recently spoken to him
and try to find him, or to make some effort to save the bail.

The respondent is a young man. Trial judges commend his conduct
in court, and he seems to keep his word good with officials and the at-
torneys with whom he has come in contact. But, notwithstanding this,
we are impressed by the testimony that he did not display in his dealings

with Miller that fidelity to the interests of his client which the law demands, and that his remissness in this respect led him into the transgression of which we find him guilty, namely, of advising his client to evade a trial.

We do not think the right to practice should be permanently taken from respondent. A time should be fixed after the expiration of which respondent may be reinstated, upon a showing of good and proper conduct in the meantime.

It is, therefore, ordered that the respondent, Abe S. Ginsberg, be suspended from practicing as an attorney at law in this state, but with the privilege to apply for a removal of the suspension, as above indicated, at any time after the expiration of one year from the filing of this opinion.